DISSENT.

Judge Underwood

delivered the following dissent to so much of the opinion of the court, as relates to the second' instruction, moved by defendant and overruled.

In this case I dissent from so much of the opinion heretofore delivered, as sustains the circuit court in refusing the second instruction asked for by the plaintiff in error. The act against gaming (1 Dist.. 833) makes void all promises where the whole or *20 any part of the consideration of such promise is mo* ney or other valuable thing won, laid, or betted at cards, dice, tables or any other game whatsoever.— Under the operation of this act, the undertakings on the part of Greathouse to pay Smedly, and of Smedly to pay Throckmorton the sums which each had won at Faro, were also hereby void. But by transferring the void promise of Greathouse in fa-¡ vor of Smedly to Throckmorton, a binding efficacy has been imparted to it, and the latter will, as the opinion stands, be permitted to recover upon it. I confess that I do not perceive the principle upon which it can be done with propriety. On the contrary, where the transfer rests upon no other consideration than that of exchanging one gaming debt for another, Í cannot conceive how a liability can be created according to any known principle of the law. There is no consideration for such a liability. Here Throckmorton has given a gaining debt on Smedly for a gaming debt on Greathouse. True Throckmorton also gave an as count for Smedly’s bond amounting to $20 in addition; and to this extent there was a valuable consideration parted with by him, provided Smedly was discharged because of the assumpsst. Even if Throckmorton has a right to recover to the extent of this $20, still a valuable consideration of that amount cannot enlarge his right to recover for a gaming consideration. I should rather say, that the gaming consideration when coupled with a valuable consideration, will vitiate the latter, than that the latter will purify the former.
Dissent.
I hold it to be incontestable that every declaration in assumpsit, must set out a consideration sufficient in law to support the action. See 1 Chitty 295.
Now I think there can be no such thing as a valuable consideration to support a contract, unless one of the parties to it, either transfers money or property at the time, or agrees to do so in future, or has already done it; or engages to perform or has performed some labor or service; or agrees to do or abstain from doing some act, the performance of which is lawful; or releases some right or privilege which may be lawfully enforced or executed. I do *21 not know that there is any other class of cases than those named, where a valuable consideration for a promise, either express or implied, can he found.— In the action of assumpsit it is a maxim that the plaintiff cannot recover more than ex equo et bono he shews himself entitled to. He must make out his right to recover, by stating and proving a consideration. In tills case Throckmorton has obtained a judgment for $130 which ex equo et bono he is not entitled to, and as I think without consideration: he has parted with no money or property and is not bound to part with any, he rendered no service and is not bound to perform any; he has made no agreement to do or not to do an act which was lawful and which agreement on his part might have been a sufficient consideration to support the promise on tiie part of Greathouse; and ho has released no right which he could have enforced by law. On the contrary, he has merely surrendered a claim to a gaming debt denounced by the statute, and which lie could not recover in a court of justice. It therefore seems to me analogous to those cases where the fountain is corrupt and where nothing but immorality can issue irom it.
Dissent.
If the doctrine is once established that gamblers by swopingor exchanging debts, can cleanse the turpitude or illegality of the consideration, there are but few of them, who will lack ingenuity to secure their winnings, by inducing their victims to promise payment to some compeer in guilt;'or to one who has either really or pretendedly won of him at a different sitting. Thus the whole policy of the statute will be defeated by circumvention, and that excellent maxim of the common law, “ ex turpi contractu oritur non actio,” disregarded.
If A promises to pay B $50 for stealing ahorse for him, and B promises to pay C $50 to furnish the stolen horse, and C steals the horse for B who delivers the horse to A and then it is agreedbetween the parties, with a full knowledge of ail the facts, that A shall pay C the $¡,60 and B he released from C and have no further claim on A, can C recover from A upon the promise? it does run counter to all my notions of the pure principles of the common *22 law, to think that they would countenance the claim of a thief and secure to him the reward of his iniquity under such circumstances. The demand of Throckmorton against Greathouse is precisely analagous to that of C against A in the case supposed. The only difference between the two cases is, that one relates to the conduct of thieves, the other to the conduct of gamblers. The common law applies to the immoral conduct of the one, and the statute operates upon the illegal contracts of the other class.
Dissent.
If Smedly chooses, he can still pay Throckmorton, notwithstanding Greathouse’s conduct. If Greathouse has violated the rides deemed honorable among gamblers, I see no reason why Smedly should shelter himself behind Greathouse. But Í disclaim the doctrine that a valuable consideration can in any case turn upon the honor of a gentleman.
The opinion proceeds upon the ground that Great-house had determined to pay the debt, although he was neither legally nor equitably bound; and that it was* therefore, a matter of no consequence how Throckmorton settled it. The opinion here assumes, I think, too much. Greathouse seems to be determined not to pay the debt, if we may judge from his resistance here. That he made promises to Throckmorton is admitted, but the very question is, whether the promises so made are binding; and. not whether these promises were made at the time with a determination to perform them or to discharge the debt to Smedly. These promises were not obligatory on Greathouse when made, because he received and was to receive no consideration. If by them he had induced Throckmorton to advance in money or property, or any thing valuable, the amount of the gaming debt due Smedly, then, I admit that when Throckmorton so made the advance, it would have imposed a liability on Greathouse to remunerate him to the extent of the advancement; because to that extent Throckmorton would otherwise sustain a loss, which constitutes as valid a consideration in law, as a gain. But here, in reference to the $130, Throckmorton has made no advance for Greathouse. He has paid for him neither money nor property, nor a phase in action. He has *23 only surrendered a gaming debt which in law is nothing, because the contract by which it exists, if it can exist at all, is void. Hence Throckmorton has not lent, or laid out and expended money for-the use of Greathouse to the extent of the $130, and for so much therefore he had no right to recover.
Dissent.
But it might be infered from the expression in the opinion, that “it was a matter of.no consequence to Greathouse how Throckmorton settled the debt,” that Greathouse could not take advantage of the turpitude or illegality of the consideration. Such an inference seems to me to run counter to the rule which permits the defendant in assumpsit under the general issue to shew any thing by which the plaintiff’s right to recover may be defeated or restricted. Some countenance is given to the opinion that Great-house cannot go into the entire want of consideration between Throckmerton and Smedly from a note in Chitty on contracts, 184. The text says that Buller justice put this case: “ Suppose A owes B 100£, and B owes C 100£, and the three meet, and it is agreed between them that A shall pay C the 100£; B’s debt is extinguished and 0 may recover that sum against A.” There is a note made 'in reference to this text to this effect: “It seems that in such case the defendant cannot object want of consideration between plaintiff and his debtor,” and XII. East. 513, 515 is referred to in support of the principle given in the note. I have examined the case in East, and instead of its being against enquiring into the consideration, it rather favors it.— Lord Filen borough said, “If one agree to receive money for the use of another upon consideration executed, however frivolous or void the consideration might have been, in respect to the person paying the money, if indeed it were not absolutely immoral or illegal, the person so receiving it cannot be permitted to gainsay his having received it for the use of that other.” Here, the money having been actually paid, the holder cannot retain it, but must account for it to him for whose use it was paid, no matter how frivolous the consideration may be, or indeed whether there be any consideration at all.— But if the consideration be immoral or illegal, what then? Shall the plaintiff who has been engaged in *24 the immorality or illegality of the transaction come into a court of justice and recover the money as a reward for his guilt or misconduct? I hink not.— The case in East is long since the Revolution, and is not authority, even if it supported the doctrine contended for.
I have not considered it a matter of importance to enquire what effect the $20 for Smedly’s bond ought to have upon the case. I doubt whether it can authorise a recovery upon counts for money lent or laid out.
Speaking of the case put by Bnller, Justice, as above, it is laid down in Chitty on Contracts 184, that, “ if the defendant was not originally indebted to the third party, (B,) as for money had and received, the plaintiff's remedy is, it seems, only by action of special assumpsit on the agreement” — an amount for board may be distinguished from money lent, or laid out and expended. Whether this $20 can sustain the action for any part of the demand set up by Throckmorton, I give no opinion, differing as I do from my brethren in the main point.